I'm sorry, that they were moving from place X to place Y, and the question is, when should that move be given effect? And you have some arguments on your side, they have some arguments on their side. If he had been indicted, you know, we don't know what a jury would have said in either case. In my view, the clerk's more problematic than the other lady, because she just was off by a month or so. But, on the other hand, you've got somebody who's in a completely different county, who clearly is gone, and the decision maker here, considers that to be in a completely different category. Yes, your honor, but the system doesn't base it upon counties, it bases it upon precincts. And Brown, because he voted in a different precinct than he was supposed to, was entitled... Well, that's not the argument, that he used to, and had his mother's residence, so when is the new house such that he should have been voting in the other precinct? Right, and I believe that creates a jury question as to whether he did that, knowingly, and it also, I think it shows... Had he been indicted, it would be a jury question, there's no question about that. When here, because it's a pretext, so is it a pretext for FMLA discrimination, that when you have this fairly serious violation, to say that, oh, because in some other questionable situation, I didn't take action, I didn't fire myself, that that shows a pretext? I guess the question then is, your honor, is it questionable? He knows what his own behavior was, and in fact, I submit that, should he be put in front of a jury, they will see him in the same way we saw him in depositions, which is behaviorally significant that the jury is going to disbelieve him, on many of the factual assertions that he makes. Looking at Brown's actions, and certainly he's hypocritical here, because he's saying, on the one hand, that you're doing this, and he knows he has done, to some extent, some of the same thing, but do we measure the similarly situated based on that conduct, or do we look at it based on where they are in the employment chain? And I go back to, Brown is the elected clerk, and Smith and Curry are employees of the clerk, so at least on the employment diagram, they're not at the same level. But more importantly, going back to this whole issue of the irregular voting pattern, how this came up is troubling, because it seems like Ms. Curry, when being counseled or having a conversation about these complaints from other employees, she seems to want to try to curry favor by saying, you know, I voted for you, as if she's trying, she brings this to the fore, doesn't she? We're not sure, Your Honor, because at the time, Curry was on chemotherapy, in one of those meetings, she had a copious nosebleed, and she's basically falling apart, and she doesn't remember the conversation very well. Brown says that she voted for him. She doesn't remember that. She thinks maybe she said she supported him, as opposed to the Democrat who preceded him. And that is, all of those conversations are sort of suspect, because she doesn't have a real clear memory of them, because she was so ill. What she said was, I supported you. That would seem to be the same thing, that she's trying to somehow curry favor based on something other than performance at work. No, Your Honor, I think it could also be interpreted as, I thought she would be fair, in a way that Ms. Ping, the predecessor, was not fair. When you say she's basically falling apart, doesn't that go to his side of the question about, you need to get your, you know, take care of yourself? Because I take it one of the main arguments that this is FMLA discrimination is when he says to her something along those lines, right, you need to mostly worry about making yourself better. And then you say that shows FMLA discrimination, but it sounds like your description of her is very much in line with that being a supportive statement. That's their position on it. Your Honor, I think actually what he should have done was put her on her FMLA leave. She had the paperwork done for the FMLA leave. She was using other employees' donated sick days on an as-needed basis. Had he... He filed it and he denied it? Because you're not making an interference claim, I didn't think. We made both, Your Honor, but the district court found that the interference claim merged with the retaliation claim. I'm sorry, do you have a question? No, maybe I have the facts wrong too. I thought that she had been using other people's leave, but that her FMLA leave had already been approved. It had been approved under the previous administration, Your Honor. The problem was that one of the issues came up that part of that paperwork had disappeared in the interim. The predecessor said it was in a locked cabinet in her office. It was complete with the certification by the doctor. In discovery, they turned over just a piece of it and said, this is what we have. Was the meeting convened for a discussion of that, or was the meeting convened for him to bring up the interview with her relative to her work? Your Honor, the meeting was one-on-ones with everybody. Hers was delayed because she had been out so sick. But was the purpose of it to re-approve the FMLA? No, it was just a one-on-one. Just a one-on-one comparable to everybody else's? Yes, ma'am. And did he ever affirmatively deny her FMLA leave that was legal? He didn't deny her, except that he terminated her. That's what I meant. Yes, of course, once she's terminated, she can't take it. Okay, thank you, counsel. Thank you, Your Honor. I have remaining time for rebuttal. Thank you, sir. May I please have the Court, Mr. Kroescher? Good morning, Your Honors. Jeff Mando on behalf of the Appalese, Kenny Brown, and Boone County, Kentucky. The trial court correctly granted summary judgment to my clients in this case because the material facts were not in dispute, and my clients were entitled to judgment as a matter of law. The following facts were material and called for summary judgment. Kenny Brown took office starting in January of 2011. As part of his self-orientation, he met with all the employees that worked in the county clerk's office. During the course of those interviews, he was told by at least five, if not six employees, about problems with Marianne Curry in the Florence office, that she was verbally abusive, referred to them as dumbass, idiot, and moron. They seem to dispute some of that. How is it you say that's undisputed? It's undisputed in that that's what they told him. I acknowledge, Your Honor, that Ms. Curry says that she didn't do it, but what's relevant for summary judgment purposes But he was quoting at least one person who said that they never had any problems. That person's not one of the five or six? Correct. That's Ms. Ping, the former clerk who Mr. Brown had defeated in the election. Okay, but she's not one of the five or six? She's not one of the five or six. Okay, go ahead. That was my fault. The five or six told these things to Mr. Brown and told them that she was also physically abusive and that she would smack him in the back of the head, hit him in the shoulder, and that it created a very tense and problematic work environment. Mr. Brown, so what's material here is I acknowledge that Ms. Curry says I didn't do that. But what's not disputed, and Ms. Curry acknowledges it, is that these employees told this to Mr. Brown. And it was then undisputed that Mr. Brown called in Ms. Curry, talked to her, she denied it, he asked her to look into it again, he testified and the record reflects that he went back, the employees stood by their statements, confirmed that Ms. Curry had done this, whereupon he has her come back in and at that point tells her that he's going to demote her from supervisor and move her to the Burlington office away from where these five or six employees were. And it was at that point in time, after he had made that decision, after he had informed Ms. Curry, after she had said I supported you, I voted for you, it was at that point that he said you should probably focus on your health rather than worry about the stress of supervising people. And on appeal and before the trial court, Ms. Curry has argued vigorously that that is direct evidence of discrimination, which means the court did not have to go through the McDonnell-Douglas burden shifting analysis. As we have demonstrated in our brief and as the trial court correctly found, that statement is not direct evidence of discrimination because it requires the listener to draw inferences about what it means. It cannot be construed from any vantage point to compel someone to conclude automatically that there was a direct link between the statement and Ms. Curry's FMLA leave and the demotion or termination that had taken place. You cannot draw the inescapable conclusion from that statement that Mr. Brown made that discrimination, either because of her FMLA leave or because of her disability, was the reason that he took the employment action that he did. It's also undisputed that after he had made this decision to demote her and transfer her, that he asked Rick Riddell, one of the deputy supervisors, to look into these statements she made because he thought that she lived in Grant County. Sure enough, that investigation revealed that Ms. Curry had in fact been living in Grant County and voting in Boone County for five years. Voting for officials that did not represent her because she did not live in that county. Mr. Brown then contacted the county attorney. After consultation with the county attorney, he called Ms. Curry in. It's undisputed that she admitted to this. She admitted that she had done this. At that point, Mr. Brown made the decision to terminate her. Within days, she was indicted by a grand jury on a Class D felony, and she pled guilty. Before we get too far into that, I know there is some case law that would support that it's not direct evidence, but what other meaning would we give it? Why would he even bring that up? If his intent is to just demote her because she has these bad reports from people she supervises, why even bring up the health issue at all? I think he was just expressing concern. It depends on how you want to construe it. He could be expressing concern that maybe some of these things that were occurring were because of the stress of supervising people. It could be construed that he was trying to be conciliatory, that he was trying to be compassionate in some way, but he certainly was not trying to say that I'm doing this or explaining his decision for taking this action because she had taken FMLA leave and had been approved for intermittent FMLA leave. If you then transfer over to the second issue that I think is critical to this case, is this is not direct evidence. In order for Ms. Curry to get to a jury, she then has to go through the burden shifting analysis and establish that the reasons that Mr. Brown articulated for the demotion and for the termination were somehow pretextual. As the trial court correctly noted, Ms. Curry did not carry that burden of establishing pretext. They were not able to establish that in fact the reasons that Mr. Brown gave were untrue They were not able to establish through evidence that the reasons Mr. Brown gave were not the motivating factor for why he actually made these employment decisions. The trial court therefore correctly concluded that they could not carry their burden to establish pretext sufficient to submit this issue to a jury. They argue that we establish pretext by going into the situation where they are similarly situated. Mr. Brown and Ms. Buchanan-Smith were similarly situated. They had engaged in the same conduct. They did not have FMLA. They did not have a disability. Therefore, they were treated differently. That establishes pretext. That analysis and that argument is flawed for several reasons. Number one, Mr. Brown is not similarly situated to Ms. Curry. He is the elected county clerk in Boone County. She was a deputy clerk. Their duties and responsibilities were significantly different. They answered to different people. The conduct in question is different in many respects, but in this one critical respect. Ms. Curry admitted that she had engaged in this voter election fraud. She came in and said, Yes, I lived in Grant County and I voted in Boone County. She was indicted by a grand jury and she pled guilty. In contrast, Mr. Brown said, No, I didn't do this. I don't admit to anything. My precinct that I voted in is where I resided. It was on Gloucester Drive until December of 2008. When I moved to Hampshire after that house was rehabbed, then I started voting in that precinct. Similarly with Ms. Buchanan Smith. The Attorney General of the state investigated Brown and concluded with no action. Is that in the record? It is. It is in the record. Mr. Crozier had filed a complaint with the Attorney General. They conducted an investigation and concluded there was insufficient evidence to bring a charge. With Ms. Buchanan Smith, who was a deputy clerk, this all came about after the fact. It came about during the court. Knowledge of this allegation came about through Ms. Curry's unemployment hearing, which obviously took place after she had been terminated, and this issue came up. Mr. Brown heard about it. That's in the 2012 election. Is that right? 2010 is when it came out. Sometime in the spring or summer of 2011 is when the unemployment hearing took place. Ms. Curry has already been terminated, and this issue about Linda Buchanan Smith comes up during the unemployment hearing. Mr. Brown immediately looks into it, conducts an investigation to see if she did it, and calls Ms. Buchanan Smith in with Rick Riddell. Ms. Buchanan Smith says, No. I still lived on my campaign drive address. I would occasionally spend time with my boyfriend and spend the night on Cedar in Florence, again, all within Boone County, within the same county, but I never intended to change my residence. I lived on campaign drive. That's also, as I read the data here, correct me, the allegation that she moved was something like 10 days before she could have changed. The registration would have closed 10 days later. Correct. It was sometime in September of 10. September 23rd. The question is, did spending the night at her boyfriend's house make that her new residence? The statute says it clearly. It's based upon where someone intends to maintain their residence. It's where they habitate. It's where they intend their residence to be. She said, I don't know if she owned it or rented it. She hadn't sold it. She hadn't quit paying rent, etc. No, she had not. Mr. Kosher tried to introduce evidence that would counter that to try and suggest that maybe that wasn't true, but the difference is she came in and said, No, this is where I lived. I did not vote in the wrong precinct. In contrast, Ms. Curry came in and said, I didn't. She admitted it. She admitted it for five years. I don't think it's insignificant that you're talking about Ms. Curry, who's outside of the county, voting for officials who do not represent her, versus someone, even if it were true, who's within the county, who just may be in a different precinct. As long as the officials are the same county-wide, there's no difference from an outcome standpoint. Am I right as I understand the briefs? With respect to her, it's exactly the same people. I thought he made the allegation that with respect to Mr. Brown, by moving or between the two, there would be a different state representative. Is that fair as the reading of the record? I don't recall, Your Honor. It makes some reference to Addie Wunscher, as opposed to Sal Santoro. Depending on where the precinct is, that could have made a difference if they were up for election during that one year. That was the drift I got. I just wasn't sure. That was the road they were trying to take the district court down. But looking at the case law and looking at the way similarly situated is defined and construing these facts, in a light most favorable to Ms. Curry, the trial court correctly concluded that they were not similarly situated, and more importantly, that he could not otherwise overcome the barrier that he faced. Mr. Crusher and Ms. Curry could not otherwise overcome that they couldn't prove that this articulated reason, the serious reason for why she was terminated, was pretextual. As a result, the trial court correctly found that there was no basis for this ADA or FMLA discrimination claim and appropriately granted summary judgment. And that's our argument. Unless the court has any further questions, I'll defer to Mr. Crusher for rebuttal. Okay. Thank you. Thank you. Mr. Crusher, you have your remaining time for rebuttal. Thank you, Your Honor. Mr. Mando primarily seems to be saying that because Brown, if it's true that Brown in fact voted illegally, that because Brown denied it, because Buchanan Smith denied it, that they should be treated differently from Curry, who told the truth. In fact, Buchanan Smith had given up the property, a new tenant lived there, another clerk, Jennifer Spicer, had told Brown when his invitation to his inauguration was returned undeliverable, that Buchanan Smith had moved long ago, and that's why the invitation was returned, she clearly had in fact moved prior to the election in which she voted. Yes, the time period was not significant, but I submit that creates a jury question as to whether the degrees of culpability. If they do the same thing, yes, Buchanan Smith turns out to be a misdemeanor because there was no different official, but it is in fact the same offense, it's just a different degree. But Brown in fact did vote for Sal Santoro rather than Adia Wichner, because he has philosophical differences with Ms. Wichner, and he made that very clear. The trial court completely disregarded the affidavit of Spicer as well, about the first comment he made about FMLA leave, which I would agree is indirect proof. She said, I don't know why she, referring to Curry, is who they were talking about, don't just go ahead and take FMLA leave. Spicer told him that FMLA leave had been approved, was in his file. At some point thereafter, we submit he began collecting evidence that he could use to justify Curry's termination, or demotion and then termination. So you're saying that the statement, why doesn't she just take FMLA leave, was discriminatory, or just that he's saying, gee, if she's sick and she's run out of other leave, why doesn't she take FMLA leave? What's wrong with that? I don't think there's anything wrong with that. It just shows that he knew she was on FMLA leave, or was qualified for FMLA leave, before he began conducting the one-on-one interviews. Curry worked there, I think, 11 years. None of these statements, by these supposed subordinates that she mistreated, relates time, or details, or anything like that. Right. It's not just his hearsay about them. They actually submitted affidavits, where they say they said this. Isn't that right? They did, Your Honor. In the reply brief, they submitted them. But I don't see how that can overtake their former boss's testimony, that in all that time that she had been the supervisor, I guess we expect that she was their contemporary. She says, they talked to me about everything. They never said a word about this. They get a new boss on the first day. The first time they ever talked to him, they say, oh, I'm dying to know. I doubt that they brought that up. And if he goes and creates that evidence to support something he's already decided to do, that's a discriminatory action, then that evidence is valueless. One other question. In the beginning of the brief, it talks about also that you had charged or filed disability discrimination. We've had no talk about that. Has that basically been dropped or on appeal, not pressed on appeal? No, Your Honor. We still press that. The trial court merely held, though, that because we couldn't prove the FMLA discrimination, all the factors were the same, and therefore it amounted to the same thing. I think that's on page 9 of the opinion. I'm sure I'd agree with that, but that's plausible that that's what he said. Right. He really never addressed the disability discrimination. Clearly, in fact, at one point he says the defendants don't dispute that the plaintiffs made a prima facie case of the discrimination. But these complaints combined with the termination with the illegal voting constitutes... So the complaints and the transfer are the legitimate non-discriminatory reason for the transfer, and then the crime is the legitimate non-discriminatory reason for the termination. That's what the district court held, yes, sir. And so because we dispute the complaints and we dispute that he treated her fairly in relation to the illegal voting, he gave everybody else a chance to change their dress. They sent out an email after he terminated her that said, if you've moved, change your dress. Now, we didn't get into that because... That's what the law is, right? If you move, you should change your dress. That's the law. Right, it is. But at the same time, he clearly gave Buchanan Smith, who was a friend of his, the opportunity to change her dress without anything going on. They say that the county attorney told him to do this, but in his deposition, the county attorney, before they invoked the privilege, had said this was Linda Buchanan Smith. He had not been consulted about her. And so... Time's expired, unless my colleagues have any further questions. Thank you. Thank you, Your Honor. Counsel, that case will be submitted. You may call the last case.